IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:21-CR-00178-M-1

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | ORDER |
| CORY SEAN HEARD, | |
| Defendant. | |

This matter comes before the court on Defendant Cory Sean Heard's ("Heard") motion to suppress evidence [DE 57]. On April 20, 2021, the United States filed an indictment charging Heard with six counts related to various drug trafficking and firearm offenses. On April 25, 2023, he filed the instant motion, seeking to suppress a quantity of heroin, a stolen firearm, and other evidence seized during a traffic stop occurring on February 8, 2021. For the following reasons, the motion is denied.

## I. Background

### A. Factual Background

The parties provided as evidence a police report [Harris Report, DE 57-1]; video footage [Harris Dashcam, DE 62-1; Varnell Dashcam, DE 62-2; Varnell Bodycam, DE 62-3]; and witness testimony and driving records during an evidentiary hearing [DE 65, 66]. The court notes that over two years have passed since Defendant's arrest. Although the passage of time has affected the memories of the eyewitnesses, the evidence as a whole competently demonstrates the following facts:

During daylight hours on February 8, 2021, Raleigh Police Department ("RPD") Officer Brenden Harris ("Officer Harris") was conducting a routine patrol until he noticed a grey Porsche Panamera driving in front of him. He ran the license plate number in CJLEADS, a comprehensive database providing law enforcement with quick access to information regarding warrants, criminal justice records, and driving records.[1] The database provided a description and photos of the two registered owners of the vehicle. Heard's records showed him to be a black male standing approximately five-foot-eight with black braids or dreadlocks. The other registered owner was shown to be a black female standing five-foot-one with blond hair. From that same interface, Officer Harris searched Heard's criminal justice records and learned that Heard had an open arrest warrant for injury to real property.

Officer Harris continued tailing the vehicle. RPD Officer Joshua Varnell ("Officer Varnell") responded to assist with an arrest. Officer Harris asked Officer Varnell for help identifying the driver as the suspect. Officer Harris described Heard based on his driver's license photo and provided further identifying information to Officer Varnell. Officer Varnell testified that while he did not independently recall doing so, his practice would have been to use either the license plate or driver's license number to search the database and view the suspect's photo. Officer Varnell testified that video from his bodycam showed he had accessed the database to view a photo before he attempted to identify the driver of the vehicle. When the vehicle came to a red light, Officer Varnell pulled up, peered through the passenger-side window, and radioed Officer Harris confirming that the driver matched the suspect's description.

---

[1] *About CJLEADS*, N.C. DEP'T INFO. TECH., https://it.nc.gov/programs/cjleads/about-cjleads (last visited July 6, 2023).

After Officer Harris got confirmation, he signaled his blue lights and sirens and stopped the vehicle in a nearby parking lot. Officer Harris approached and saw a person matching Heard's description through the driver-side window. Heard had already cracked the window and immediately provided his driver's license to Officer Harris. When asked, Heard also identified himself as the registered owner of the vehicle. Officer Harris then instructed Heard to step out and informed Heard that he was being arrested for an open warrant.

Officer Harris walked Heard to his patrol vehicle to conduct a search incident to arrest. Before conducting the pat down, Officer Harris asked if Heard had any weapons on his person, which Heard denied. Officer Varnell had noticed a needle on the floorboard of the vehicle and asked if there were any other needles or sharp objects on his person. Heard said he had "a couple in my car, but my insulin bottle is in there too." Officer Harris then frisked Heard, locating a plastic corner baggie in Heard's pants pocket. The baggie contained 1.9 grams of a green, leafy substance that looked, felt, and smelled like marijuana. He pulled the baggie out, placed it in front of Heard, and said, "just a little bit of weed." Heard said, "yeah, some weed." He denied the vehicle contained any additional marijuana.

The officers then searched the vehicle. The unlocked glove compartment contained a stolen Springfield XD-M 9mm pistol, loaded with 18 rounds of ammunition, and another corner baggie, which contained 5.1 grams of suspected heroin. The passenger area contained a digital scale with residue and two cell phones belonging to Heard.

### B. Procedural Background

On April 20, 2021, the United States filed the instant indictment, charging Heard with various drug trafficking and firearm offenses, including conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin, a quantity of marijuana, and 500 grams or more of cocaine, in violation of 21 U.S.C. § 846; possession with intent to distribute a quantity of heroin,

3
Case 5:21-cr-00178-M   Document 69   Filed 07/14/23   Page 3 of 10

in violation of 21 U.S.C. § 841(a)(l); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(l)(A); and possession a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). On April 25, 2023, Heard filed the instant motion to suppress. DE 57. The United States responded on May 23, 2023. DE 62. The court held an evidentiary hearing on July 6, 2023, during which the court heard testimony from Officers Harris and Varnell regarding the events leading to Heard's arrest and indictment.

## II. Legal Standards

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. The "ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Riley v. California*, 573 U.S. 373, 381 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). Warrantless searches or seizures are "per se unreasonable," subject to a few historic exceptions. *United States v. Richardson*, 607 F.3d 357, 364 (4th Cir. 2010) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). "The government bears the burden of proof in justifying a warrantless search or seizure." *United States v. McGee*, 736 F.3d 263, 269 (4th Cir. 2013).

## III. Discussion

Heard makes two arguments supporting relief. First, Heard challenges the reasonableness of the initial traffic stop. According to Heard, law enforcement could not have credibly confirmed his identity prior to the stop. DE 57 at 6. Thus, Heard contends, Officer Harris could not have reasonably inferred that he was driving the vehicle based solely on the information that Heard was one of two registered owners. *See id.* Second, Heard argues that the marijuana-like substance found on his person could not support probable cause to search his vehicle under the automobile exception because hemp and marijuana are indistinguishable by appearance and odor. *Id.* at 7. The court considers each in turn.

## A. Traffic Stop

The Supreme Court laid out the standard governing this analysis in *Kansas v. Glover*, 140 S. Ct. 1183 (2020), which the court briefly restates. "The Fourth Amendment permits an officer to initiate a brief investigative traffic stop when he has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Id.* at 1187 (quoting *United States v. Cortez*, 449 U.S. 411, 417–418 (1981)); *United States v. Ochoa*, 539 F. Supp. 3d 504, 507 (E.D.N.C. 2021) ("[Under *Terry v. Ohio*, 392 U.S. 1 (1967)], law-enforcement officers may—without a warrant—briefly seize a person and frisk him for weapons when the officer reasonably suspects that the person has engaged, is engaged, or will be engaged in criminal activity."). Reasonable suspicion cannot depend on a mere "hunch," but "the level of suspicion the standard requires is . . . obviously less than is necessary for probable cause." *Glover*, 140 S. Ct. at 1187 (alteration in original) (quoting *Prado Navarette v. California*, 572 U.S. 393, 397 (2014)). "The standard depends on the factual and practical considerations of everyday life on which *reasonable and prudent men*, not legal technicians, act. Courts cannot reasonably demand scientific certainty where none exists. Rather, they must permit officers to make commonsense judgments and inferences about human behavior." *Id.* at 1188 (cleaned up).

In *Glover*, the Supreme Court decided "whether the facts known to [the responding officer] at the time of the traffic stop gave rise to reasonable suspicion," specifically regarding the inference that the driver was the registered owner of the vehicle. *Id.* Because the officer "knew that the license plate was linked to a truck matching the observed vehicle and that the registered owner of the vehicle had a revoked license," Justice Thomas, writing for an eight-member majority, reasoned that the officer properly "drew the commonsense inference that [the defendant-owner] was likely the driver of the vehicle, which provided more than reasonable suspicion to initiate the stop." *Id.* at 1188, 1190. Nonetheless, the Court recognized that this inference, as with any

reasonable suspicion analysis, depends on the totality of the circumstances and that "exculpatory information" possessed by law enforcement could negate the reasonableness of the "reasonable inference" at issue. *See id.* at 1191. Accordingly, the Court held that "when the officer lacks information negating an inference that the owner is the driver of the vehicle, the stop is reasonable." *Id.* at 1186.

Heard argues that *Glover* makes it unreasonable for Officer Harris to initiate the traffic stop because the fact that he is not the only registered owner negates the inference that he was the driver. DE 57 at 6. Heard's argument has no traction. In *Glover*, law enforcement relied exclusively on the inference that the driver was the registered owner and did not confirm the driver's identity before conducting the traffic stop. 140 S. Ct. at 1188–1190. The factual basis in this case is different. As explained below, law enforcement confirmed that the suspect was the driver before initiating the traffic stop and did not rely solely on an inference that the registered owner was the driver. Thus, while *Glover* sets the standard, it does not dictate the outcome.

The evidence shows that Officer Harris knew one of the two registered owners (Heard) had an active warrant for his arrest. DE 57-1 at 2. Officer Harris testified he saw photos of each registered owner when he ran the license plate number through the database. Moreover, Officer Varnell testified that it was his practice to view a suspect's photo prior to identification. He further testified his database query showed a photo of a suspect prior to identification. Based on Officer Varnell's testimony, the court infers that Officer Varnell saw Heard's photo before he confirmed the driver's appearance. Although Heard argues the window tint was significant and would have sufficiently obscured law enforcement's view inside the vehicle, *see* DE 57 at 3, both officers credibly testified the window was comfortably transparent to allow them to identify Heard from a short distance. Specifically, Officer Harris testified he saw Heard through the window when he

approached the vehicle to retrieve Heard's driver's license. Moreover, Officer Varnell testified he saw a needle through the window when he approached the stopped vehicle. Even though certain video angles call into question the transparency of the windows, the human eye is often more perceptive than a dashcam. The court therefore accepts the officers' testimony as true and concludes Officer Varnell's position was advantageous. His position at the intersection would have allowed him to confirm that the driver matched the description of an average-sized man with dark hair more closely than that of a small woman with blond hair. *See, e.g.*, Harris Report, DE 57-1 at 5; Harris Dashcam, DE 62-1. Because the confirmation was credible, the traffic stop was reasonable.

### B. Vehicle Search

The Fourth Amendment generally requires police to obtain a warrant before conducting a search. However, under the automobile exception, "if a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *United States v. Kelly*, 592 F.3d 586, 589 (4th Cir. 2010) (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996)). Probable cause exists where there is "a fair probability that contraband or evidence of a crime will be found in a particular place" based on the totality of the circumstances. *United States v. Jones*, 952 F.3d 153, 158 (4th Cir. 2020). "Probable cause requires only 'the kind of fair probability on which reasonable and prudent people, not legal technicians,' would rely." *Id.* (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)). When assessing probable cause, courts must examine the facts "from the standpoint of an objectively reasonable police officer," giving "due weight to inferences drawn from those facts by . . . local law enforcement officers." *Ornelas v. United States*, 517 U.S. 690, 696, 699 (1996). Probable cause for purposes of the automobile exception exists "when a police officer lawfully searches a

7
Case 5:21-cr-00178-M   Document 69   Filed 07/14/23   Page 7 of 10

vehicle's recent occupant and finds contraband on his person." *United States v. Baker*, 719 F.3d 313, 319 (4th Cir. 2013).

Under the totality of the circumstances, Officer Harris had probable cause to search the vehicle for additional contraband. When Heard exited the vehicle, Officer Harris found a corner baggie containing a marijuana-like substance on Heard's person. Consistent with his training and experience, the substance looked, felt, and smelled like marijuana. The use of a corner baggie reflected a common form of packaging for illicit substances. Most importantly, Heard admitted the baggie contained marijuana. Although this statement was unwarned, it may properly be considered within the probable cause analysis. *See United States v. Patane*, 542 U.S. 630, 641 (2004) (plurality opinion) (holding that the "'exclusion of unwarned statements [at trial] . . . is a complete and sufficient remedy' for any perceived *Miranda* violation"); *United States v. Scrutchins*, 2022 WL 357492, at *9 (D.S.C. Feb. 7, 2022) (holding that "unwarned custodial statements were properly included . . . to support probable cause for a search warrant"). These facts, taken together, support "an objective belief that contraband [was] in the vehicle." *See Baker*, 719 F.3d at 319.

Heard contends that the legalization of hemp at the state and federal level should foreclose a probable cause determination based solely on an officer's senses and support adopting an odor-plus standard. DE 57 at 8. The court cannot agree. The Fourth Circuit has "repeatedly held that the odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place." *United States v. Price*, 717 F. App'x 241, 244 (4th Cir. 2018) (quoting *United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004)). And this court has seen and rejected this same argument in a previous case. *United States v. Hines*, No. 7:22-cr-00036-M, slip op. at 9–10 (E.D.N.C. Nov. 21, 2022) (stating that "the precedent at issue is stated in unambiguous terms" and

concluding that "because marijuana possession remains illegal in North Carolina, an officer could reasonably believe that contraband is present based on the odor of marijuana"). There appears little reason to reconsider this precedent based on the facts presented.

Heard draws on several state decisions to bolster his claim that an odor-plus standard should be adopted. DE 57 at 9 (citing *North Carolina v. Parker*, 860 S.E.2d 21 (N.C. Ct. App. 2021); *Colorado v. Zuniga*, 372 P.3d 1052 (Colo. 2016); *Vermont v. Clinton-Aimable*, 232 A.3d 1092 (Vt. 2020)). Each case properly drew on the totality of the circumstances in assessing the existence of probable cause.[2] To be clear, so too does this court. As explained above, Heard admitted that the substance found on his person was marijuana, not hemp. The corner-baggie packaging also fairly showed the substance to be marijuana, not hemp. Thus, even if the court were to accept Heard's argument that odor-nil is no longer warranted and odor-plus should be adopted, Heard's argument fails.

## IV. Conclusion

Before initiating the traffic stop, law enforcement confirmed the driver of the vehicle was the male registered owner subject to an open arrest warrant. Thus, the traffic stop was reasonable. Moreover, law enforcement found on the driver's person a substance that looked, felt, and smelled like an illicit substance; was packaged in a manner consistent with an illicit substance; and was confirmed by the driver to be an illicit substance. Although the admission was unwarned, it may

---

[2] *See Parker*, 860 S.E.2d at 29 ("[W]e need not determine whether the scent or visual identification of marijuana alone remains sufficient to grant an officer probable cause to search a vehicle."); *Zuniga*, 372 P.3d at 1059 ("[A] substantial number of other marijuana-related activities remain unlawful under Colorado law. Given that state of affairs, the odor of marijuana is still suggestive of criminal activity."); *Clinton-Aimable*, 232 A.3d at 1101 ("We have observed that 'the odor of marijuana, detected by a trained and experienced police officer, can provide a reasonable basis to believe that marijuana is present. This remains true. Nonetheless, the smell of marijuana alone will not always be enough to establish probable cause of criminal activity and is just one factor to be considered." (cleaned up)).

properly be considered in the probable cause analysis. Thus, the search of the vehicle was supported by probable cause. Defendant's motion to suppress [DE 57] is DENIED.

SO ORDERED this 14th day of July, 2023.

*Richard E Myers II*
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE